# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
July 17, 2012 Session

## STATE OF TENNESSEE v. FREDRICK JOHN DEEN CLARK

**Direct Appeal from the Circuit Court for Grundy County**
**No. 4674    Thomas W. Graham, Judge**

**No. M2011-02503-CCA-R3-CD - Filed March 6, 2013**

The appellant, Fredrick John Deen Clark, pled guilty in the Grundy County Circuit Court to vehicular assault, a Class D felony. Pursuant to the plea agreement, the appellant received a six-year sentence with the manner of service to be determined by the trial court. After a sentencing hearing, the trial court ordered that the appellant serve his sentence in confinement. On appeal, the appellant contends that the trial court erred by denying his request for alternative sentencing. Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

Paul D. Cross, Monteagle, Tennessee, for the appellant, Fredrick John Deen Clark.

Robert E. Cooper, Jr., Attorney General and Reporter, Rachel Harmon, Assistant Attorney General; James Michael Taylor, District Attorney General; and David Shinn and David O. McGovern, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

In November 2010, the Grundy County Grand Jury indicted the appellant for attempted second degree murder, two counts of aggravated assault, driving under the influence, violation of the implied consent law, vehicular assault, and reckless endangerment. On July 22, 2011, he pled guilty to vehicular assault, a Class D felony. At the appellant's guilty plea hearing, the State and the defense advised the court of the following facts: On

May 5, 2010, Timothy Smartt[1] and the appellant went fishing in the Grundy Lakes area. Afterward, they drove in the appellant's truck to the Tracy City area. They got into an argument near Flury's Store, so Smartt jumped out of the truck and started walking across the parking lot. The appellant hit Smartt once or twice with his truck and left the scene. The police contacted the appellant, and he returned voluntarily. He appeared to be under the influence of an intoxicant. The victim had a head injury and several broken bones and was airlifted to Erlanger Medical Center.

Pursuant to the plea agreement, the appellant agreed to be sentenced as a Range II, multiple offender with the manner of service to be determined by the trial court. At the sentencing hearing, the victim testified for the State that after the appellant's Ford F-150 truck hit him, the appellant "backed up and run over [him] again." He said that as a result of the incident, his hip was damaged, requiring three surgeries; his shoulder was broken; and his skull was "left . . . hanging with all kind of staples and stitches in it." The victim was responsible for the care of his two sisters and had to have hip replacement surgery as a result of his being hit by the appellant's truck. He said that he and the appellant used to be friends but that the appellant should serve his time in confinement. The trial court asked if the appellant hit him with the truck intentionally, and he said yes. He said the appellant hit him once from behind, causing him to slide across the parking lot and receive "bad road rash." He stated that while he was on the ground, the appellant hit him again, splitting the side of his head "wide open." The appellant backed up and was going to hit the victim a third time, but the victim moved out of the way.

On cross-examination, the victim testified that he had "[o]ne or two" felony convictions, including a conviction for aggravated assault. He maintained that the appellant hit him with the truck twice and that the appellant "tried to run over [him] again." He acknowledged that when he got out of the appellant's truck, he had the appellant's medication bottle in his pocket. He said that the appellant asked him to "hold" the bottle because the appellant kept losing it. The victim and the appellant began arguing, and the victim tried to give the bottle back to the appellant. He also tried to get out of the truck, but the appellant would not stop long enough for him to get out.

Teddy Trail testified for the appellant that he was a retired police officer and witnessed the vehicular assault. The appellant's truck hit the victim one time. On cross-examination, Trail testified that after the appellant hit the victim, the appellant drove away from the scene. The victim was seriously injured, and Trail telephoned the police. The State asked if the appellant had hit the victim intentionally, and Trail answered, "I can't say that,

---

[1]Throughout the record, the victim's last name appears as "Smartt" or "Smart." We have used his last name as it appears in the appellant's indictment.

sir."

Mike Rigsby testified that he was the appellant's pastor and had known the appellant about ten years. He said that the appellant was "making progress" and that the appellant had recently married and had a baby. The appellant attended church regularly and could function well in society if granted probation.

On cross-examination, the State asked Rigsby if he was aware that the appellant continued "to have issues with marijuana usage[?]" Rigsby stated, "Well, I wouldn't doubt it." He said that the appellant previously had a problem with alcohol but that he had seen the appellant "mature."

The State introduced the appellant's presentence report into evidence. In the report, the then thirty-three-year-old appellant stated that he graduated from high school and that his mental health was "poor." He also stated that he had never used alcohol but that he began using marijuana when he was seventeen years old, used it daily, and successfully completed a treatment program in 1997. The appellant claimed in the report that he stopped using marijuana "less than a year ago" because he got married and had a baby. However, according to the presentence report, which was completed on September 21, 2011, the appellant tested positive for marijuana and opiates on September 8, 2011. In the report, the appellant described his physical health as "poor" and said that he became disabled in 2011 due to hearing loss. According to the report, the appellant worked at Silver Bait, LLC for a few months in 2007 but had to stop working when he became disabled. He reported no other employment. The report shows that the appellant has a 2006 misdemeanor conviction for marijuana possession. In 2007, a probation violation warrant was issued for his failure to complete public service work and pay anything toward his court costs and fines. At the time the presentence report was completed, the warrant was still outstanding.

The appellant introduced the victim's medical records into evidence. The records show that the victim was diagnosed with "[b]lunt" abdominal injury, a humeral head fracture, a scalp laceration, and a fractured shoulder. According to the records, the victim's head injury was "minor." The records do not show that the victim's hip was injured.

The trial court found that confinement was not necessary to protect society from a defendant who has a long history of criminal conduct. However, the court found that confinement was necessary to avoid depreciating the seriousness of the offense and to provide an effective deterrent to others likely to commit similar offenses because "[t]his was a very serious offense. . . . When you hit a human body, bones and flesh, with steel, with a multi-hundred-horsepower vehicle, that is a serious offense." The trial court noted that the appellant would not submit to alcohol or drug testing and that he "wasn't so much worried

about the condition of the victim as he was about himself." Finally, the trial court concluded that measures less restrictive than confinement had been frequently or recently applied unsuccessfully to the appellant because the appellant never completed the probation he received for his 2006 misdemeanor conviction. The trial court stated that the appellant hit the victim intentionally and ordered that he serve his sentence in confinement.

## II. Analysis

The appellant claims that the trial court erred by denying his request for alternative sentencing. The State argues that the trial court properly ordered the appellant to serve his sentence in confinement because the court was "very disturbed" by the facts of this case and because the appellant was on probation when he committed the crime. We conclude that the appellant is not entitled to relief.

In sentencing a defendant, the trial court shall consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). Previously, appellate review of the length, range, or manner of service of a sentence was de novo with a presumption of correctness. See Tenn. Code Ann. § 40-35-401(d). However, our supreme court recently announced that "sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012). Even more recently, the court specifically held that the abuse of discretion standard, with a presumption of reasonableness, applies to a review of a denial of alternative sentencing. State v. Christine Caudle, ___ S.W.3d ___, No. M2010-01172-SC-R11-CD, 2012 Tenn. LEXIS 824, *16 (Nashville, Nov. 27, 2012). The burden is on the appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.

An appellant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. See Tenn. Code Ann. § 40-35-303(a). The appellant's sentence meets this requirement. Moreover, an appellant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. See Tenn. Code Ann. § 40-35-102(6). Tennessee Code Annotated section 40-35-103(1) sets forth the following sentencing

considerations which are utilized in determining the appropriateness of alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

See also State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). Additionally, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(5). A defendant with a long history of criminal conduct and "evincing failure of past efforts at rehabilitation" is presumed unsuitable for alternative sentencing. Tenn. Code Ann. § 40-35-102(5).

The appellant contends that the trial court erred by denying his request for full probation or split confinement. In particular, he claims that the trial court "was apparently operating under the misperception that intentionally was an element of [vehicular assault]." The appellant is referring to an exchange with defense counsel in which the trial court stated, "It's an intentional disregard for the safety of others which is as close to intent to hit as you can get without, I guess, coming forward and saying it. So, anyway, I just -- I think it's a tragedy and, you know, all of it is partially affected by, I'm sure, folks' use of either marijuana and/or alcohol or both."

Initially, we note that the appellant was sentenced as a Range II, multiple offender. Therefore, he is not considered to be a favorable candidate for alternative sentencing. Moreover, the trial court determined that confinement was necessary to avoid depreciating the seriousness of the offense or particularly suited to provide an effective deterrence to others likely to commit similar offenses. In denying full probation to avoid depreciating the seriousness of the offense, the criminal act should be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree. Zeolia, 928 S.W.2d at 462. In this case, the trial court concluded that the appellant's hitting the victim

with the truck, resulting in serious injuries; leaving the scene; and failing to show any concern for the victim satisfied that factor.

The trial court also noted that the appellant had been smoking marijuana since he was seventeen years old and stated that his "condition" contributed to the crime in this case. Undoubtedly, the appellant still has an addiction to illegal drugs. Although he completed a drug treatment program once, he continues to use marijuana. In addition, he claimed in the presentence report that he stopped using marijuana, but he tested positive for marijuana and opiates. Therefore, the appellant shows poor potential for rehabilitation and treatment. See State v. Nunley, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999) (providing that "[l]ack of candor and credibility are indications of a defendant's potential for rehabilitation"). Applying the presumption of reasonableness, we conclude that the appellant has not shown that the trial court abused its discretion by ordering him to serve his sentence in confinement.

### III. Conclusion

Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE